## JOHN W. GRIGGS

*vs.*

## ERNST FLECKENSTEIN.

The rule that in an action for injury to personal property, the act complained of must be the natural and proximate cause of the injury, applied to the facts of this case.

The plaintiff cannot recover for an injury to his property, if through his own negligence he contributes to the injury complained of, if such injury was not wilful on the part of the defendant.

If the injury to the plaintiff's property is the natural and proximate result of the defendant's negligence, he is liable, although a third party contributes to the injury.

The mere fact of leaving a horse unhitched in a street, is not necessarily negligence.

Whether it is negligence to leave a horse unhitched, is a question to be determined by the jury from all the facts in the case, under the instruction of the Court as to what constitutes negligence; and when the question of negligence arises, it is competent for the party against whom the negligence is charged, to prove that the horse was trustworthy to stand unhitched under such circumstances as those in which he was thus left.

This action was commenced in the District Court for Rice County. The complaint alleges substantially, that defendant carelessly left his team, consisting of a span of horses and double sleigh, witho ut being hitched, fastened, held, or in any manner secured or attended, in the principal street of Faribault; that said horses started and ran violently along said street against another team, consisting also of a span of horses and sleigh, standing securely fastened at the side of the street, frightening them, and causing them to

break loose, and run across the street against a horse and sleigh belonging to plaintiff, damaging plaintiff's sleigh, and so seriously wounding his horse, as to occasion its death.

The answer, among other things, admits the running away of defendant's team, and the injury to plaintiff's horse as alleged; denies that defendant's team caused the said other team to run into plaintiff's horse and sleigh; alleges that the injury was caused by plaintiff's carelesness in leaving his horse alone, and unhitched, by reason where-of, the plaintiff's horse becoming frightened, moved into the track of the runaway team doing the injury; and that but for the unauthorized and careless interference of third parties, by whom the team doing the injury was swerved from their course, they would not have run against the team of any one.

The cause was tried before a jury.

The rulings of the Court upon the admissibility of testimony, and the facts established, sufficiently appear in the opinion of the Court.

After the evidence was closed and the parties had rested, the plaintiff's counsel, among other things requested the Court to charge the jury,—

*First.* That the right of the plaintiff to recover in this action is not affected by the action of the crowd in trying to stop the defendant's team, whether said crowd did or did not by their action cause the team to swerve from the course it otherwise would have taken.

*Second.* That if the jury should find that the action of the crowd swayed the horses of the defendant from the course they would have taken but for said action, and that the collisions would not have taken place or the damage been done had the crowd not interfered, yet the defendant

is equally responsible as if no such interference had occured.

The Court refused each of said requests. To such refusals the plaintiff by his counsel severally excepted.

The defendant by his counsel requested the Court to give in charge to the jury the following propositions:

1.   If they find from the evidence, that if the defendant's horses became frightened while standing in the public street, even if negligently left unhitched by the defendant, and ran down the street, and that one or more persons rushed into the street, and strove, by hallooing, swinging of hats, and other noise, to stop them, and the defendant's team shied off to the side of the street and ran into the team of Mathews, thereby frightening them and causing them to run away, the defendant is not responsible for any injury caused by said last named team, unless the jury are able from the evidence to say that even if said swinging of hands, hallooing, or other demonstrations of bystanders had not occurred, the injury to plaintiff's horse would not have taken place.

The Court gave this proposition with the following oral explanation and modification:

That if the acts of the crowd caused the injury by driving the team from the course which they would otherwise have taken and upon the team of Mathews, the defendant is not responsible, even if he negligently left his horses unhitched, because there must be not only negligence but injury resulting therefrom to render the defendant liable, but unless they were entirely satisfied from the evidence that the defendant's team would not have run upon the team of Mathews if it had not been swayed from its course by the crowd, they must find for the plaintiff.

To which proposition and modification plaintiff excepted.

3.   That if they shall find from the evidence that the defendant's team was negligently left unhitched by the de-

fendant in the public street, and becoming frightened ran away, and while running down the centre of the street, were by shouts and swinging of hands, or hats, or other noises by third parties, swerved from their course to the side of the street where the team which did the immediate injury was standing, thus frightening them and causing them to run against the plaintiff's horse, which without such acts of third parties the defendant's team would not have done, the defendant is not responsible.

Tho Court gave this proposition and plaintiff excepted.

The Judge also charged the jury that the leaving of the plaintiff's horse in the street unhitched was an act of negligence, which, if it contributed to the injury, would debar the owner from recovering, but which would not affect the right of the owner to recover if the jury believe that the injury would have occurred even if the horse had been properly hitched.

To which instruction the plaintiff's counsel excepted.

The jury found a verdict for the defendant. The plaintiff made a motion for a new trial, which was denied.

Judgment was entered for defendant. The plaintiff appeals therefrom to this Court.

PERKINS & MOTT for Appellant.

I.—The first error committed by the court below was in excluding the question contained in *folio* 15 of the " *case*" in relation to the character of the plaintiff's horse.

The evidence was material upon the question, whether the boy Willie, who was in charge of the horse at the time of the injury, was exercising the degree of care and caution which a man of ordinary prudence and discretion would

have taken under the circumstances. *Lynch vs. Nurdin,* cited in *Marble vs. Worcester,* 4 *Gray,* 405.

II.—The judge erred in his instructions to the jury upon the point of the interference of the crowd in trying to stop the defendant's team.

If the negligence of the defendant contributed to produce the injury, it is no defense that the negligence of others also contributed thereto. *Clark vs. Eighth Avenue R.R. Co.,* 36 *N. Y.,* 135 ; 2 *E. D. Smith,* 413 ; *Sheridan vs. Brooklyn and Newton R. R. Co.,* 36 *N. Y.,* 39 ; *Guille vs. Sawan,* 19 *Johns.,* 381 ; *Eaton vs. Boston & Lowell R. R. Co.,* 11 *Allen,* 500.

III.—The requests of the plaintiff as to the point that where the fault of the defendant is clearly established, the rule that the plaintiff cannot recover when his own fault contributed to the injury, is to be applied with caution, should have been given. *See City of St Paul vs. Kuby,* 8 *Minn.,* 164 ; 4 *E. D. Smith,* 24.

That the defendant is not to be excused when guilty of gross negligence, on the ground of slight negligence on the part of the plaintiff. *See McGrath vs. Hudson River R. Co.,* 32 *Barb.* 144 ; 8 *Minn.,* 165 ; 19 *How. Pr.,* 211 ; *Willis vs. Long Island R. R. Co.,* 32 *Barb.,* 398 ; 18 *N. Y.,* 258 ; 22 *N. Y.,* 209.

*Slight negligence* is defined to be the absence of *extreme care,* while the plaintiff is required to exercise but ordinary caution and foresight.

The refusal to charge as requested, in effect held the plaintiff amenable to the highest degree of diligence.

That if the injury resulted from the negligence of the defendant, he is not exonerated on the ground of the plaintiff's fault unless the latter be made clearly to appear, is a proposition of undoubted truth. Negligence of the plain-

tiff is not to be *presumed.* The burden of proving negligence on the part of the plaintiff is on the defendant, and especially in this case where he tenders the affirmative of that issue in the pleadings. 8 *Minn.,* 164 ; 2 *E. D. Smith,* 462.

The point would not be material if all the *facts* appeared in an unquestioned form, but as there is some discrepancy and uncertainty in the testimony concerning them, it was highly important that the instruction should be given, unless the court assume, as they will not, that as matter of law upon the plaintiff's own showing, there was negligence on his part.

The last request declined by the Court, embodies the idea that if the boy was properly attending his horse at the time of the collision, and was guilty of no fault, the plaintiff was entitled to recover, *though the horse was unhitched* at the time. The proposition is unobjectionable unless the court hold as the judge below did, that the leaving the horse unhitched, was in law, an act of negligence.

IV.—The failure to give the several foregoing propositions was not cured, though the same may have been affirmed under different forms, elsewhere in the charge. If the judge refused them because they were covered by other instructions, he should have so declared, lest the jury should have been misled by an unqualified refusal. *Welling vs. Judge,* 40 *Barb.,* 212.

The plaintiff had the right to insist that his legal propositions be submitted to the jury in the terms selected by him, or if the judge desired to qualify the propositions, the qualifying remarks should have accompanied the refusal, and this not having been done, the judgment should be reversed unless it clearly appears that the plaintiff was not prejudiced. 3 *Minn.* 181; 9 *Minn.,* 228 ; 10 *Wis.,* 55.

Griggs v. Fleckenstein.

V.—The judge erred in charging the jury, that leaving the horse unhitched was an act of negligence. In the state of the evidence, that was a question of fact exclusively for the jury, and depending on the circumstances.

If the horse was attended with reasonable care, it certainly was not negligent to leave him *unhitched*.

Could we have shown the character of the animal, the jury would have been materially aided in solving the question.

That the question of negligence is one of 'fact for the jury. *See City of St. Paul vs. Kuby*, 8 *Minn.*, 161, *and the cases there cited ;* 40 *Barb.*, 193.

VI.—The damages claimed by the plaintiff were not too remote. *Vanderburgh vs. Truax*, 4 *Denio*, 464 ; *Thomas and wife vs. Winchester*, 2 *Seld.*, 397 ; *Burnham vs. Butler*, 31 *N. Y.*, 480.

In the latter case, it will be observed, there was no intimation by the court or counsel against the propriety of the judgment, on the ground of the remoteness of the damages, although the case in respect to that principle is exactly parallel with the one at bar. 1 *Hilliard on Torts*, 99 ; *Scott vs. Shepherd*, 2 *Wm. Black.*, 893.

G. E. Cole for Respondent.

I.—The judge charged the jury "that the leaving of the plaintiff's horse in the street unhitched was an act of negligence, which, if it contributed to the injury, would debar the owner from recovering, but which would not affect the right of the owner to recover, if the jury believed that the injury would have occurred even if the horse had been properly hitched," and also overruled the plaintiff's ques-

tion, "Was the horse trustworthy to stand unhitched in the street."

In these rulings there was no error.

In view of the uncontradicted testimony of the plaintiff's witness, Andrews, and of the defendant's witness, Wheeler, that the cause of the injury was the movement of the plaintiff's horse into the track of the runaway team, it was, if it would not have been in any other event, entirely immaterial whether the plaintiff's horse was gentle or otherwise, since it is clear that the act of leaving him unhitched was the sole cause of the injury.

That a horse, however gentle, would, in the frantic rush of frightened teams—liable to occur at any moment in a crowded city street—be likely to be startled and partake of the general panic, and if unhitched rush into the path of danger, is self-evident.

The only error of the Court was in neglecting to instruct the jury as matter of law that the evidence demonstrating that the plaintiff's negligence not only contributed to, but was the proximate cause of the injury, the defendant was entitled to a verdict. *Wilds vs. Hudson River R. R. Co.*, 24 *N.Y.*, 430-3-4; *Todd vs. Old Colony and Fall R. R. R. Co.*, 3 *Allen*, 18; *Gahagan vs. Boston and Lowell R. R. Co.*, 1 *Allen* 187.

II.—It is conceded that a wrong doer cannot apportion the consequences of his own wrong, and that where two efficient concurring causes, resulting from the joint act of two wrong doers, are in operation at the same time, either or both of the parties setting those causes in motion are responsible.

It is also conceded that such cases as *Kidder vs. Barnstable, Rowell v. Lowell,* 7 *Gray*, 104, 100, *and Barber vs. Roxbury,* 11 *Allen,* 318, were decided upon the construction

of a Massachusetts statute as to the liability of towns, and are inapplicable to the case at bar; but these propositions and the cases cited by the plaintiff in support of them are entirely inapplicable to the case at bar. "*Causa proxima non remota spectatur*," is the ancient rule of the law confidently invoked by the defendant upon this branch of the case.

The defendant is only responsible for the natural and proximate and not for the remote consequences flowing from his acts. If a subsequent and distinct cause, intervening after that, for which the plaintiff is responsible had ceased to act, has been productive of injury, and if that was the immediate cause of the injury, and but for that no injury would have occurred, the defendant is not responsible.

*Burrell's Law Dictionary, title* " *Causa ;* " *Denny vs. New York Central Railway Co.*, 13 *Gray*, 481–5–6; 2 *Parsons on Contracts*, 454–5–6–7 *and note; Marble vs. City of Worcester*, 4 *Gray*, 395–7–8, 405 ; *Jenks vs. Inhabitants of Wilbraham*, 11 *Gray*, 142 ; *Chamberlain v. Porter*, 9 *Minn.*, 260–5 ; *Davidson v. Nichols*, 11 *Allen*, 514, 519 ; *Mayor of Albany v. Cuniff*, 2 *Comstock* 165.

*b.* The cases relied on by the plaintiff, may be divided into two classes. 1st. When two wrong doers, acting at the same time concurrently, produce an injury which is the *direct* result of *their joint act* like those referred to upon the Massachusetts statutes, or those cited under the 2nd point of plaintiff's brief.

2d. The cases of *Scott vs. Shepard ; Guille vs. Swan ; Valentine vs. Truax ; Thomas vs. Winchester ; Burnham vs. Butler.*

*Guille vs. Swan*, was a case of direct trespass upon the real estate of another, done by the defendant and others, incited and enacted by him. 19 *Johns*, 381.

*Valentine vs. Truax* was also a case where the defendant

directly caused an injury, by driving a boy upon the spigot of a wine cask.

In *Burnham vs. Butler*, the injury was traceable directly to the joint acts of the defendants, and is precisely analagous to what the case at bar would have been, with the acts of third parties in swerving the defendant's team from their course omitted.

*Scott vs. Shepard*, and *Thomas vs. Winchester*, were cases in which the injury resulted from unlawful and criminal acts of the defendant. See *Scott vs. Shepard, vol. 1, part 1st, Smith's Leading cases*, 687 ; *see these cases commented upon and distinguished from cases like the one at bar in Marble vs. City of Worcester and Davidson vs. Nicholls—cited ante.*

c. But if the Court erred on this branch of the case, a new trial will not be granted if upon the whole case the verdict is upon the law and the evidence, correct. The paper book expressly states, that it presents *all* the testimony, and it being in evidence and undisputed that the plaintiff's negligence contributed to the injury, a new trial could but be productive of the same result and must be denied. *Lucas vs. Taunton and New Bedford R. R. Co.*, 6 *Gray*, 64–72; 2 *Graham and Waterman on N. T.*–48–634.

III.—An instruction that the rule, that if the plaintiff's negligence contributed to the result he cannot recover, is to be applied with caution, while not objectionable in an opinion delivered by a court of review, as a charge to a jury, would have been altogether too indefinite and would have been equivalent to instructing them that it should not be applied at all.

It was the duty of the Court to instruct them accurately as to the rule, and theirs to apply it.

b. The proposition that the defendant is not to be excused on the ground of slight negligence in the plaintiff, is

not supported by the authorities cited by him, and is distinctly repudiated in a recent case in the State from whence his authorities are drawn.    *Wilds vs. Hudson R. R. R. Co.*, 24 *N. Y.*, 432.

A distinction in the degrees of diligence is only known in the law of bailment.    In a case like the present, simple negligence in the plaintiff, contributing *in any degree* to the injury, defeats his action, and simple negligence in the defendant, that of the plaintiff not concurring, sustains it.    *See* 24 *N. Y.*, 432.

The plaintiff admits that the refusal to give these charges would not be material if the facts appeared in an unquestioned form.

They do appear in an unquestioned form. Upon the question of the plaintiff's negligence, there is no dispute.

His own witness, Andrews, testifies that the movement of the horse brought his hind parts in range of the runaway team.    Wheeler testifies that he would not have been injured had he not moved into the track of the team, and his own son testifies that the horse was left standing unhitched, and he in the store, and not a shadow of evidence appears in contradiction.

*c.* If incidental errors occurred in any portion of the charge, it was, as a whole, correct.    The idea that even if in another portion of his charge, the judge covered the point expressly requested, it would not cure the error, is not sustained by the case cited, 40 *Barb.*, 212, (there the difficulty was, that the point was not covered by any part of the charge,) and is denied in another, and more authoritative decision, also cited by plaintiff.    *Clark vs. 8th Avenue R. R. Co.*, 36 *N. Y.*, 138.

*By the Court*—McMillan, J.—The plaintiff brings this

action to recover damages for the loss of a horse, which was killed under the following circumstances:

The defendant left his team, consisting of a span of horses and a double sleigh attached thereto, standing in the principal business street in the town of Faribault, without being hitched, fastened, held or in any manner secured. It started and ran violently along the street, and against another team belonging to one Mathews, likewise consisting of two horses attached to a double sleigh, standing properly hitched, at the side of the street, frightening the latter team, so that it broke loose, and ran with the sleigh attached to it, across the street and against a horse and sleigh belonging to the plaintiff, breaking the plaintiff's sleigh and injuring his horse, so that he died in two or three days thereafter. There is evidence tending to show that before the defendant's horses ran into Mathew's team, and while they were running down the street, a crowd of persons came out into the street, and hallooed and raised their hats, for the purpose of stopping the horses; that this occasioned the horses to swerve from the course they were taking, and drove them across the street, so that they hit Mathew's team. The plaintiff's horse at the time of the injury was unhitched, and at the side of the street. The plaintiff's son, who had driven his father's horse to this place, left him unhitched and went into a store near by; he testified upon the trial, that while in the store he heard the first runaway team (defendant's) as it passed, and went out on the sidewalk, and was on the sidewalk about eight feet from his horse when it was injured; then he saw a pair of horses with sleigh running down the street; they started his father's horse, which was standing near the sidewalk in the street, a few feet from the place he had left him; that he spoke to the horse and he stopped, and immediately the pole of the other double sleigh struck

his horse.   There is testimony on the part of the defendant tending to show that when the first runaway team passed, it started the plaintiff's horse; that he turned and moved towards the street, and that if the plaintiff's horse had not stirred, the second team would have passed without hitting him.

Upon the trial of the cause, the plaintiff being upon the stand as a witness on his own behalf, the plaintiff's counsel asked the witness the following question : " Was the horse trustworthy to stand unhitched in the street? " objected to by defendant's counsel on the ground that it was immaterial.   The objection was sustained by the Court, and the question excluded, to which the plaintiff excepted.

Several exceptions were taken by the plaintiff to the refusal of the Court to charge in accordance with requests submitted by him, and to the charge of the Court in accordance with requests submitted by the defendant, which we need not consider in detail.

The case involves, substantially, three points.

1.   The effect upon the rights of the parties to this action of the conduct of the persons or crowd in hallooing and waving their hats in front of the runaway team of defendant in order to stop it.

2.   The effect upon the plaintiff's right to recover, of the fact that the horse had been left unhitched in the street.

3.   The admissibility of the evidence sought to be elicited by the question put to the plaintiff as a witness. .

The rule of law is well settled, that where the plaintiff has been injured in his person or property by the wrongful act or omission of the defendant, or through his culpable negligence, the fact that a third party, by his wrong or negligence, contributed to the injury, does not relieve the de-

fendant from liability. *McMahon v. Davidson*, 12 *Minn.*, 372–3.

There is no controversy about the fact that the running away of the defendant's team was attributable to and occurred at first through the negligence of the defendant. The team had not stopped, or been at all restrained in their flight, at the time of the appearance of the persons or crowd in the street; the attempt to stop the team was not successful, but as we have seen, may have swerved the horses from the direct course in which they were going, and occasioned the collision with the Mathews team hitched at the side of the street. The attempt to stop the team in their course through the street, was certainly proper, and would ordinarily be expected; under such circumstances there is nothing in the testimony which tends to show, that there was anything wrongful, careless or improper in the means resorted to by these persons to accomplish this purpose; they are therefore entirely innocent, and free from blame. If they contributed to the injury in any degree, they were innocent agents in the matter; and as their interference in this manner was proper, and was such an interference as would be embraced in the ordinary results of such an occurrence as this runaway, it would in nowise excuse the defendant, or relieve him from the injury resulting from the runaway, which occurred through his negligence. The testimony all shows that the defendant's team did not stop from the time it started to run away, at the Post Office, until after it came in collision with, and started the Mathews team; that the interposition of the crowd or persons in the street, was for the purpose of stopping the runaway team, and before its collision; nor is there any evidence to show that the team would have stopped if the crowd had not interposed.

It is evident therefore, that the running away, from the

starting of defendant's team till the collision, was a single occurrence ; and whatever influence the interposition of the crowd had in occasioning the collision, it was not the sole cause of it ; that the running away which occurred through the defendant's negligence was, in part at least, the occasion of it ; both causes therefore, in the most favorable view for the defendant, must have contributed to it ; and as the defendant is responsible through his negligence for one of the agencies through which the injury occurred, under the rule we have stated, he is liable, although without the agency of both causes the accident would not have transpired. Mathews' team it appears, was hitched to a post in front of McGuery's store, and there is nothing tending to show any negligence or carelessness on the part of the owner of the team.

The immediate cause of the starting of Mathews' team, was the collision of the defendant's team with it, and the injury of the plaintiff's horse was caused directly by Mathews' team striking it. This brings the case within the rule, that the injury must be the natural and proximate result of the act complained of. The collision with Mathews' team was the natural, but not necessary, consequence of the running away of defendant's team in the street. All the consequences which actually resulted in this case from the running away of defendant's team, might, we think, reasonably have been expected to occur by the running away of any team, under similar circumstances, in the principal business street of a town, and the running away of the defendant's team, was the efficient cause of the injury to plaintiff's horse, because it put in operation the force, which was the immediate and direct cause of the injury. 2 *Greenl. Ev.* secs. 256, 268, 268 a ; 3 *Parsons on Cont.*, 179–80.

For these reasons, the first and second requests submitted by the plaintiff, which were refused, should have been

given to the jury; and the first request submitted by the defendant, as explained and modified by the court, together with the third request submitted by the defendant, and given in charge to the jury, should have been refused.

It is also a well-settled rule, that in an action for injury to person or property, the plaintiff cannot recover if he contributed to the injury by his own culpable negligence, or if, by the exercise of ordinary care, he could have avoided the injury. 1 *Ch. Pl.* 127, *p.* 4, authorities cited.

The question of the plaintiff's negligence in this case was one of fact, to be determined by the jury, under the instructions of the court as to what constitutes negligence. *St. Paul vs. Kuby*, 8 *Minn.*, 171; *Johnson vs. Winona and St. P. R. R. Co.*, 11 *Minn.*, 307. The degree of care required of the plaintiff, or those in charge of his horse at the time of the injury, is that which would be exercised by a person of ordinary care and prudence under like circumstances. It cannot be said that the fact of leaving the horse unhitched is in itself negligence; whether it is negligence to leave a horse unhitched, must depend upon the disposition of the horse; whether he was under the observation and control of some person all the time, and many other circumstances, and is a question to be determined by the jury from the facts of each case. *Lynch vs. Nurdin*, 1 *Ad. & El.*, *N. S.* 29; 1 *Hilliard on Torts*, 154; *Park vs. O'Brien*, 23 *Conn*, 339.

It was, therefore, proper for the plaintiff to show, by his testimony, that his horse was trustworthy to stand unhitched in the street, and the question put to the witness for that purpose, should have been permitted. It was also erroneous to charge the jury that "the leaving of the plaintiff's horse in the street unhitched, was an act of negligence."

For the reasons stated, the judgment below is reversed, and the verdict of the jury set aside and a new trial granted.